# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH ROLLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 3638 |
| | ) | |
| BOARD OF EDUCATION OF GLEN | ) | |
| ELLYN SCHOOL DISTRICT #41, | ) | |
| PRINCIPAL LAURA CAMPBELL, and | ) | |
| SUPT. JACK BARSHINGER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Judith Roller sued the Glen Ellyn Board of Education, Principal Laura Campbell, and Superintendent Jack Barshinger, after the Board voted not to renew her teaching contract for the 2005-2006 school year. She seeks a declaratory judgment that the Board violated the Illinois School Code, 105 ILCS 5/24-11, by failing to give her a specific reason for its action (Count 1) and a writ of certiorari – a form of administrative review under Illinois law – declaring that the Board's action was arbitrary and against the manifest weight of the evidence (Count 2). She has also sued the Board, Campbell, and Barshinger for violating her constitutional rights, 42 U.S.C. § 1983 (Count 3), and has sued the Board for violating the Illinois Open Meetings Act, 5 ILCS 120/2e (Count 4) and discriminating against her because of her age, 29 U.S.C. § 626 (Count 5). The defendants have moved to dismiss Counts 1 through 4 of Roller's amended complaint. For the following reasons, the Court grants the motion in part and denies it in part.

**Facts**

According to Roller's amended complaint, she began teaching physical education in Glen Ellyn School District 41 as a substitute teacher in 1997. She continued as a substitute and part-time teacher until 2001, when the Board hired her as a full-time probationary teacher and gave her a one-year contract. The Board renewed Roller's contract each of the next three years based in part on performance reviews in which she received evaluations of "excellent" in every category assessed. Things changed, however, in late fall of 2004 and January 2005, when Campbell rated her "unsatisfactory" in the category of instructional skills and "satisfactory" in every other category.

This evaluation was particularly unsettling to Roller because 2004-2005 was her last year as a probationary teacher, and if the Board chose to renew her contract for a fifth year, she could be dismissed only for cause. Unfortunately for Roller, based in part on the evaluation, Campbell – along with Barshinger – recommended that the Board not renew Roller's contract for a fifth year, and at a March 21, 2005 meeting, the Board carried out the recommendation. It said Roller's contract was not being renewed because she was "unsatisfactory in the area of instructional skills."

**Discussion**

"Whether a complaint sufficiently states a claim turns on whether it meets the general rules of pleading a claim for relief." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). In making this determination, the Court must take the factual allegations in Roller's pleadings, including the complaint, briefs, and attached exhibits, as true and draw reasonable inferences in her favor. *Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001).

When ruling on a motion to dismiss, the Court may take judicial notice of matters of public record without converting the motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000).

Roller's first claim derives from the Illinois School Code, which states, "Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor . . . ." 105 ILCS 5/24-11. Roller contends that "unsatisfactory in the area of instructional skills" is not a sufficiently specific reason for dismissal.

A reason is specific if it "fairly apprise[s] the teacher of the alleged deficiency upon which the employer-school board bases its action, and with sufficient specificity to enable the teacher to refute the charge." *Wade v. Granite City Cmty. Unit Sch. Dist. No. 9*, 71 Ill. App. 2d 34, 36, 218 N.E.2d 19, 20 (1966). In *Wade*, the court held that the school board's reason met the statute's requirements where it fired the plaintiff because "his certificate did not meet the defendant school district's requirements for the fulfillment of his present position." *Id.* In two other cases, courts held that a school board's reason, though somewhat vague, was sufficient, but suggested that the board had complied with the statute only because the employee's perceived deficiencies had been explained during previous meetings and evaluations. *Whitmore v. Bd. of Ed. of DeKalb Cmty. Sch. Dist. No. 428*, No. 90 C 20143, 1992 WL 70339, *4 (N.D. Ill. Mar. 18, 1992) ("failed to meet the District's expectations"); *Howard v. Bd. of Educ. of Freeport Sch. Dist. No. 145*, 160 Ill. App. 3d 309, 314, 513 N.E.2d 545, 548 (1987) ("inability to adequately supervise employees"). In the only case the Court found holding that a school board's reason

was not specific within the meaning of section 24-11, the school board gave the plaintiff no reason at all for her termination. *Donahoo v. Bd. of Educ. of Sch. Dist. No. 303*, 413 Ill. 422, 426, 109 N.E.2d 787, 789 (1952).

In this case, the Board's reason for its action – Roller's perceived lack of "instructional skills" – was, like the reasons given to the teachers in *Howard* and *Whitmore,* somewhat opaque. It is unclear from *Howard*[1] whether Illinois courts would approve a reason of this sort without the additional, more particularized guidance that the teacher in that case had been given in separate evaluations and meetings. At the present stage of the case, the Court cannot determine whether the Board provided any other information to Roller that shed light on its reason for not renewing her contract. For these reasons, and in view of the high standard a defendant must meet to obtain dismissal of a complaint under Rule 12(b)(6), the Court believes the most prudent course is to deny defendant's motion as to Count 1 and defer definitive resolution of this issue of Illinois law for later determination following development of the record.

Roller's second claim seeks judicial review of the Board's action through a common law writ of certiorari. As the Illinois Appellate Court said in *Am. Fed'n of State, County & Mun. Employees, Council 31, AFL-CIO v. Dept. of Cent. Mgmt. Svcs.,* 288 Ill. App. 3d 701, 710, 681 N.E.2d 998, 1004 (1997),

> [t]he common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions. The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, that the inferior tribunal proceeded according to the applicable law.

---

[1] *Whitmore* is a federal case and thus does not provide clear guidance regarding how Illinois courts would treat this issue.

Because quasi-judicial proceedings are held to adjudicate facts, judicial review of a quasi-judicial administrative hearing usually occurs only after an agency has conducted an adversarial hearing before a neutral fact-finder. *See Brown v. Duncan*, 361 Ill. App. 3d 125, —, 836 N.E.2d 78, 84 (2005); *East St. Louis Sch. Dist. No.189 Bd. of Educ. v. East St. Louis Sch. Dist. No. 189 Fin. Oversight Panel*, 349 Ill. App. 3d 445, 450, 811 N.E.2d 692, 698 (2004).

In *East St. Louis*, a financial oversight panel elected not to approve a contract the school board approved with an architectural firm. After the trial court declared that the oversight panel overstepped its legal authority, the oversight panel argued on appeal that its decision was subject only to administrative review, which could be had only through a writ of certiorari. The court rejected this argument because the oversight panel did not hold a fact-finding hearing and, thus, did not take quasi-judicial action. The court said that there was no record on which to base judicial review, and, as a result, review by way of certiorari was inappropriate. Similarly, the Board held no hearing on Roller's teaching ability. Without such a record, the Court would have no way to review the Board's decision, and, as in *East St. Louis*, Roller's action for declaratory relief is the only appropriate vehicle for review. Her claim for certiorari is therefore dismissed.

Roller's next claim is a § 1983 claim for violation of due process under the Fourteenth Amendment; she says the Board violated her right to pursue the occupation of her choice by publicly labeling her "unsatisfactory in the area of instructional skills." A claim that a public employer has violated an employee's right to pursue her occupation requires action by the employer that stigmatizes the employee; public disclosure of the stigmatizing information; and a tangible loss of other employment opportunities as a result of the public disclosure. *Head v. Chi. Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000). "Only if the circumstances of an

employee's discharge so sully the employee's reputation or character that the employee will essentially be blacklisted in his or her chosen profession will it be possible to pursue a due process liberty interest claim." *Id.* at 802.

In *Head*, the plaintiff, a discharged principal, sued a school board for disseminating false allegations that "constitute[d] charges of ineptitude and professional inadequacies." The court affirmed the dismissal of the plaintiff's complaint and said that "charges of professional incompetence do not impose the sort of stigma that actually infringes on an employee's liberty to pursue an occupation." *Id.* Similarly, in *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995), the court held that the plaintiff's liberty interest was not affected where the defendant made public statements that the plaintiff "was not competent to carry the Park District in the new directions the Board had mapped out."

Roller bases her constitutional claim on the Board's publicly stated reason for not renewing her contract: that she was unsatisfactory in the area of instructional skills. This statement – like those considered insufficient in *Lashbrook* and *Head* to give rise to a viable claim – was simply a charge of professional incompetence. Though Roller attempts to distinguish *Head* as dealing with a different type of liberty interest, the language in that case could not have been clearer: "simply labeling an employee as being incompetent or otherwise unable to meet an employee's expectations does not infringe the employee's liberty." For these reasons, the Board's stated reason did not stigmatize Roller in a way that affected her constitutionally protected liberty interest. Count 3 of her complaint is dismissed.

Roller's fourth claim alleges a violation of the Illinois Open Meetings Act, which governs the procedure of public meetings like the one conducted by the Board. The Act states

that "[n]o final action may be taken at closed meetings. Final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted." 5 ILCS 120/2(e). The Act further states that "[a] public body may hold a meeting closed to the public . . . upon a majority vote of a quorum present." 5 ILCS 120/2a. Roller claims that the Board violated the Act by not publicly reciting that Roller was being dismissed at the end of the school year; by not preceding its final action by publicly reciting that it was considering the dismissal of a teacher; and by not taking a majority vote before adjourning to a closed meeting. Am. Compl. at 9.

Roller's first two arguments are essentially the same. She complains that the Board failed to publicly recite that it was considering the non-renewal of Roller's contract in violation of 5 ILCS 120/2(e). This argument, however, is contradicted by the minutes of the March 21, 2005 meeting, which plainly state that "Mrs. McElvain moved and Mr. Marcheschi seconded to accept the recommendation to release fourth year full-time probationary teachers at the end of the 2004-2005 school year as presented on the attached." A resolution authorizing the dismissal of Judy Roller was attached to the meeting minutes. Roller's argument is also contradicted by the agenda of the March 21 meeting, which was publicly posted on March 17. The agenda stated that the Board would be considering "Recommendations for Employment and Dismissal."[2]

Roller argues that these public recitals were insufficient to meet the statute's requirements because they did not name her personally. The Court has not found, and Roller has not cited, a case discussing how specific a public notice must be in order to satisfy 5 ILCS

---

[2] The Court takes judicial notice of the March 21, 2005 meeting minutes as well as the agenda posted on March 17. *See Anderson*, 217 F.3d at 474-75.

120/2(e).  We conclude that the Act does not require as much as Roller demands.  Rather, it says

only that the Board must recite "the nature of the matter being considered" and "inform the

public of the business being conducted."  The agenda posted prior to the meeting, together with

the recital of the motion passed during the meeting itself, was enough to satisfy the statute.

Roller also asks the Court to declare the Board's final action null and void and enjoin

further violations of the Act because, prior to voting on her contract, it adjourned to a closed

meeting without taking a majority vote.   The parties disagree whether the Board adjourned to a

closed meeting upon a majority vote.  The Board has presented the Court with an original and

amended account of the actions it took prior to the closed meeting.  The original does not reflect

a vote being taken; the amended one does.  Roller challenges the veracity of the amended

minutes, which were not prepared until after this lawsuit was filed.  The Court cannot resolve

this conflict on a motion to dismiss and therefore assumes for purposes of the motion to dismiss

that the Board adjourned to a closed meeting without first taking a majority vote.

The Open Meetings Act empowers reviewing courts to remedy violations of the Act by

granting appropriate relief, including

> granting a [sic] relief by mandamus requiring that a meeting be open to the public,
> granting an injunction against future violations of this Act, ordering the public body to
> make available to the public such portion of the minutes of a meeting as is not authorized
> to be kept confidential under this Act, or declaring null and void any final action taken at
> a closed meeting in violation of this Act.

5 ILCS 120/3.

As indicated earlier, the Open Meetings Act prohibits the taking of final action at a

closed meeting.  5 ILCS 120/2(e).  Roller does not allege that the Board took final action on the

renewal of her contract in a closed session.  Rather, she contends that the Board's consideration

8

of her contract during a closed session conducted in violation of the Act (because no majority vote was taken to go to closed session) renders null and void the Board's subsequent action taken in open session.

There is a dearth of case law interpreting this provision of the Open Meetings Act, but from what the Court has found, Roller's interpretation is strained. First of all, Illinois law is clear that the Open Meetings Act is satisfied when a public body deliberates, or even votes, in a closed session, so long as it returns to open session to take a final roll call vote. *See Verticchio v. Divernon Cmty. Unit Sch. Dist. No. 13*, 198 Ill. App. 3d 202, 206, 555 N.E.2d 738, 741 (1990); *Grissom v. Bd. of Educ. of Buckley-Loda Cmty. Sch. Dist. No. 8*, 55 Ill. App. 3d 667, 673, 370 N.E.2d 1298, 1304; *Jewell v. Bd. Of Educ., DuQuoin Comm. Unit Schs.*, 19 Ill. App. 3d 1091, 1094, 312 N.E.2d 659, 662 (1974). That is exactly what happened in this case. The only other problem Roller identifies is the failure of the Board to take a majority vote before entering closed session. The language of the Act, however, allows courts to invalidate only "final action taken at a closed meeting," not an action that, though likely the product of discussion in an improperly conducted closed meeting, was finalized and voted on in open session.

The Board finds additional support in *Bd. of Regents of the Regency Univ. Sys. v. Reynard*, 292 Ill. App. 3d 968, 979, 686 N.E.2d 1222, 1229-30 (1997). In *Reynard*, the plaintiff sought to declare null and void a recommendation made by the University of Illinois Athletic Council to the president of the university. The recommendation was considered and agreed to in closed session, but the Council failed to abide by the procedures of the Open Meetings Act. The court said that it was "unaware as to how mere discussions can be declared null and void" and stated that nothing would be gained by voiding the recommendation because the president, not

9

the Council, made the final decision.

Together, the *Verticchio* line of cases, *Reynard*, and the language of the statute persuade the Court that it has no authority to invalidate a final action taken in open session, simply because the Board considered the final action in a closed session not preceded by a majority vote. In this case, the March 21, 2005 meeting minutes – the original ones – make clear that final action on Roller's contract was taken in open session. *Verticchio* and *Reynard* indicate that if the vote is taken in an open session, procedural infirmities that occurred in a closed session, or in deciding to go to closed session, are of no consequence.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part and denies it in part. Counts 2, 3, and 4 of the amended complaint are dismissed for failure to state a claim. The motion is denied as to Count 1. Defendant is directed to answer Count 1 on or before January 30, 2006. The case is set for a status hearing, to be conducted by telephone, at 9:00 a.m. on January 31, 2006 to discuss the possibility of settlement. The parties are directed to initiate the telephone conference.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Court

Date: January 18, 2006